# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

BRUNILDA VALLECASTRO,
NELSON VALLE,
      Plaintiffs,

    v.

TOBIN, MELIEN & MAROHN, et al.,
      Defendants.

No. 3:13-cv-1441 (SRU)

## RULING AND ORDER

*Pro se* plaintiff Brunilda ValleCastro filed a complaint alleging violations of the Fair

Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, and the Creditors'

Collection Practices Act ("CCPA"), Conn. Gen. Stat. §§ 36a-645, *et seq.*, against defendants

William Marohn, Joseph Tobin, Jack Kendrick, Kathleen Johnson, Gabriela Vivian, and Tobin

Melien & Marohn ("TMM"). On December 16, 2014, I granted Vivian's motion to dismiss the

claims against her with prejudice as well as Kendrick's motion to dismiss the claims against him

without prejudice, and gave ValleCastro leave to file an amended complaint no later than

January 31, 2015 (doc. 55). On February 5, 2015, ValleCastro filed an untimely amended

complaint alleging violations of the FDCPA and the Connecticut Unfair Trade Practices Act

("CUTPA"), Conn. Gen. Stat. §§ 42-110, *et seq.*, and adding two additional defendants, Green

Tree Servicing, LLC ("Green Tree") and National Bear Hill Trust ("NBHT") (doc. 57). The

amended complaint additionally added Nelson Valle as a *pro se* plaintiff, alleging violations of

the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, against Green Tree.

Defendants Green Tree, Kendrick, and NHBT then moved to dismiss Counts I–VII of the

amended complaint for failure to state a claim on which relief could be granted (doc. 62).

For the following reasons, the defendants' motion to dismiss is GRANTED in part and DENIED in part.

## I.   Standard of Review

Where one party proceeds *pro se*, the court reads that party's pleadings liberally and interprets them "to raise the strongest arguments that they suggest." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001). Despite this obligation, a complaint must include sufficient factual allegations that, "accepted as true, [ ] state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief. *Iqbal*, 556 U.S. at 678–79; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they

must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). *Plausibility* at the pleading stage is nonetheless distinct from *probability*, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (quotation marks omitted).

## II.    Background

ValleCastro[1] brings her amended complaint against defendants Tobin, Melien & Marohn, Green Tree Servicing, LLC, National Bear Hill Trust, William Marohn, Kathleen Johnson, and Jack Kendrick, alleging violations of the FDCPA's provisions regarding false or misleading representations, 15 U.S.C. § 1692e; unfair practices, 15 U.S.C. § 1692f; and validation of debts, 15 U.S.C. § 1692g; as well as corresponding violations of CUTPA. Am. Compl. ¶¶ 6.1, 6.2, 7.8, 8.11, 9.4, 10.7, 11.7 (doc. 57). Valle joins the amended complaint, alleging violations of the TCPA's prohibition on certain uses of automated telephone equipment, 47 U.S.C. § 227. Am. Compl. ¶ 12.18.

The debt at issue was originally owned by GE Capital Retail Bank and serviced by Green Tree. Defs.' Mot. Dismiss Br. 2, Ex. A (Promissory Note), Ex. C (Federal Deposit Insurance Corporation's Bank History). NHBT is the present owner of the debt. *See* Am. Compl. ¶ 5.13,

---

[1] Nelson Valle asserts in the amended complaint that he is acting as the "administrator / agent" for ValleCastro. That position is not legally recognized—one non-lawyer cannot represent another non-lawyer in a lawsuit. That means each *pro se* party must sign any filing entered on her behalf, which apparently did not occur on the Plaintiffs' Memorandum in Opposition to the present motion (doc. 75). Further, because Valle's alleged "confusion" regarding Green Tree's conduct, Am. Compl. ¶ 6.1, is not sufficient to assert an interest in any of the counts at issue on the present motion, Valle will not be discussed in the remainder of this Ruling.

Ex. H (Green Tree Letter to ValleCastro, Jan. 17, 2014). TMM is a law firm engaged in debt

collection, and Marohn, Tobin, and Johnson are attorneys at that firm. Am. Compl. ¶¶ 3.5–3.8.

In an undated letter, Landmark Asset Receivables Management LLC ("Landmark") sent

ValleCastro a letter informing her that Green Tree had "placed [her account] with our agency for

collections." Am. Compl. ¶ 5.2, Ex. B. In a second undated letter, Landmark informed

ValleCastro that the transfer had taken place on August 22, 2012, and that she had thirty days to

dispute the validity of the debt or to request the name and address of the original creditor. Am.

Compl. ¶ 5.3, Ex. C.

On May 2, 2013, TMM sent ValleCastro a dunning letter addressed to "Castro Brunilda

Valle" regarding an outstanding debt owed to creditor GE Capital Retail Bank, identified itself as

a debt collector, and complied with the form obligations of 15 U.S.C. § 1692g(a). Am. Compl.,

Ex. D; *see also Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996) (notice must include "the

amount of the debt, the name of the creditor, a statement that the debt's validity will be assumed

unless disputed by the consumer within 30 days, and an offer to verify the debt and provide the

name and address of the original creditor, if the consumer so requests"). On May 13, 2013,

ValleCastro disputed the validity of the debt in its entirety and requested a validation pursuant to

15 U.S.C. § 1692g(b). Am. Compl., Ex. E. On June 3, 2013, Green Tree responded with a letter

identifying the creditor as "GE Capital Retail Bank," describing the payment history of the debt,

and providing a copy of the Note. Defs.' Mot. Dismiss Br. 3 n.4, Ex. D. On June 14, 2013, TMM

submitted a letter providing the name and address of the original creditor and attached an

affidavit by Kendrick, on behalf of GE Capital Retail Bank, as validation of the debt. Am.

Compl., Ex. F. On July 3, 2013, ValleCastro responded with a letter contesting the affidavit as

insufficient to verify the debt and requested an accounting, a "ledger of the alleged obligation

including . . . paying history, arrears, interest, etc." and the original account number of the disputed debt. Am. Compl., Ex. G. Sometime between August 22 and September 9, 2013, TMM served ValleCastro with a summons and copy of a complaint filed in state court for default on the promissory note that created the debt in dispute. Defs.' Mot. Dismiss Br. Ex. E. ValleCastro then filed this lawsuit on September 30, 2013 (doc. 1).

On October 10, 2013, ValleCastro submitted another verification request to a party whose identity is not disclosed in the complaint. Am. Compl. ¶ 5.11. On November 8, 2013, TMM filed a motion for default in state court, which was granted on November 18. Defs.' Mot. Dismiss Br. Exs. F, G.

Between January 14, 2014 and April 28, 2014, ValleCastro exchanged correspondence with Green Tree. On January 14, 2014, Green Tree sent a letter informing ValleCastro that the debt had been sold on December 18, 2013 to NHBT, and that Green Tree remained the servicer on the debt. Am. Compl. ¶ 5.13, Ex. H. On January 17, 2014, ValleCastro sent a letter to Green Tree requesting validation of the debt. Am. Compl. ¶ 5.17, Ex. J. On January 27, 2014, Green Tree responded with a letter stating that the account was under review and that a written response would follow within 60 days. Am. Compl. ¶ 5.19, Ex. L. On February 21, 2014, Green Tree sent a letter stating that a copy of the original Note was enclosed. Am. Compl. ¶ 5.23, Ex. O. ValleCastro alleges that the Note was not actually included. Am. Compl. ¶ 5.23. Also on February 21, 2014, ValleCastro sent another letter requesting verification of the debt. Am. Compl. ¶ 5.24. On April 17, 2014, Green Tree sent a letter stating that it had become aware of ValleCastro's attempts "to change Green Tree's reporting on [her] above-referenced accounts," and asked her to contact Green Tree directly with any concerns. Am. Compl. ¶ 5.25, Ex. P. On April 28, 2014, ValleCastro again requested verification of the debt. Am. Compl. ¶ Ex. Q. On

June 12, 2014, Green Tree sent a letter denying that it had violated either the Fair Credit

Reporting Act or the FDCPA, and informed ValleCastro that it had updated the account

information with the four major credit companies to "reflect the account as a charged off account

we are actively collecting on." Defs.' Mot. Dismiss Br. 6 n.7, Ex. H. ValleCastro denies

receiving that letter. Am. Compl. ¶ 5.28.

Between January 25, 2014 and April 28, 2014, ValleCastro also exchanged

correspondence with U.S. Bank Trust, the trustee for NBHT. On January 25, 2014, ValleCastro

sent a letter to NBHT requesting validation of the debt. Am. Compl. ¶ 5.18, Ex. K. On February

7, 2014, U.S. Bank Trust responded with a letter stating that it was only acting as trustee for

NBHT, and confirming that NBHT was the owner of the mortgage and the note. Am. Compl. ¶

5.12, Ex. N. On April 28, 2014, ValleCastro sent another request directly to NBHT for the

validation of the debt. Am. Compl. ¶ 5.27, Ex. R.

On or about July 10, 2014, Valle, presumably on behalf of ValleCastro, contacted GE

Capital Retail Bank, which stated that it did not have any interest in the debt, and that it believed

that Green Tree was collecting on behalf of NBHT. Am. Compl. ¶ 5.30.

I granted Vivian's motion to dismiss with prejudice on December 16, 2014 (doc. 55). At

that time, I also granted Kendrick's motion to dismiss the FDCPA claims against him because

ValleCastro had not pleaded facts sufficient to classify Kendrick as a debt collector under that

statute. That dismissal was without prejudice, giving ValleCastro leave to amend her complaint

to correct that defect. Additionally, I dismissed ValleCastro's claims under the CCPA with

prejudice because she had failed to plead facts alleging that either Kendrick or Vivian was a

creditor or representative of a creditor as required under the state statute.

The amended complaint (doc. 57) was filed on February 5, 2015.

**III.**   **Discussion**

ValleCastro raises claims under the FDCPA, CUTPA, and, along with Valle, under the TCPA. The defendants move to dismiss only the FDCPA and CUTPA claims.

A.   ValleCastro's Claims under the FDCPA

All of the FDCPA provisions cited by ValleCastro primarily apply to debt collectors, as defined under the statute. *See* 15 U.S.C. §§ 1692e, 1692f, 1692g. As a preliminary matter, ValleCastro has adequately alleged that Green Tree, Kendrick, and NBHT are debt collectors for the purposes of the FDCPA.

The FDCPA defines a creditor as: "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." The FDCPA provides two definitions for "debt collector:" (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The same provision exempts from those definitions officers and employees of a creditor who seek to collect the debt in the creditor's name for the creditor. *Id.* Section 1692a(6) also exempts "any person collecting or attempting to collect any debt owed or due . . . to the extent such activity . . . concerns a debt which was originated by such person; [or] concerns a debt which was not in default at the time it was obtained by such person."

District courts in the Second Circuit have interpreted section 1692a(6) to exclude from the definition of an FDCPA debt collector the originating creditors, as well as their assignees and loan servicers who obtain a debt prior to default. *See Thomas v. Am. Serv. Fin. Corp.*, 966 F. Supp. 2d 82, 94–95 (E.D.N.Y. 2013); *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp.

2d 430, 442 (E.D.N.Y. 2013); *Thomas v. JPMorgan Chase & Co.*, 811 F. Supp. 2d 781, 801–02 (S.D.N.Y. 2011); *Cyphers v. Litton Loan Servicing, LLP*, 503 F. Supp. 2d 547, 552 (N.D.N.Y. 2007). When a servicer or assignee acquires the debt after it has gone into default, however, the exemption does not apply because, under the FDCPA, "the classification of debt collector depends upon the status of a debt, rather than the type of collection activities used." *Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 86 (2d Cir. 2003); *Pacheco v. Joseph McMahon Corp.*, 698 F. Supp. 2d 291, 295 (D. Conn. 2010) ("It is . . . well settled that the FDCPA 'treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not.'") (quoting *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003)).

Courts in this Circuit have also been willing to impose individual liability under the FDCPA "where the defendant sought to be held liable personally engaged in the prohibited conduct." *Allison v. Whitman & Meyers, LLC*, No. 13-CV-696-JTC, 2015 WL 860757, at *2 (W.D.N.Y. Feb. 27, 2015) (collecting cases).

ValleCasto has adequately alleged that Green Tree "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." *See* Am. Compl. ¶ 3.3(b) (asserting that Green Tree is registered as a consumer collection agency in Connecticut); Ex. H (letter from Green Tree including statement that: "Federal law may require that we disclose Green Tree is a debt collector."); Ex I (billing statement from Green Tree). As the defendants point out, however, insofar as Green Tree was the servicer of the debt before it went into default, it is not considered a "debt collector" under the FDCPA. Defs.' Mot. Dismiss Br. 9. But ValleCastro alleges in her amended complaint that Green Tree transferred its servicing rights to Landmark "on or about August 22, 2012," and provides two letters from

Landmark consistent with that assertion. Am. Compl., 5.3, Exs. B, C. All parties agree that the default occurred at least by November 2011 and that Green Tree began servicing the loan again at some point after August 22, 2012. Taking the facts pleaded in the amended complaint as true, ValleCastro has adequately alleged that Green Tree acquired its current servicing rights to the debt after it was in default and thus should be treated as a debt collector for any of its conduct after August 22, 2012. *See Kapsis v. Am. Home Mortgage Servicing Inc.*, 923 F. Supp. 2d 430, 442 (E.D.N.Y. 2013) (holding plaintiff had adequately alleged mortgage servicer was a debt collector with "a plausible claim that [the loan] was in default when [the defendant] obtained it").

Kendrick maintains that, during the relevant period, he was not a debt collector as an officer or agent of GE Capital Retail Bank, which contention is consistent with his signature on the affidavit he provided to TMM on June 4, 2013. Am. Compl., Ex. F. ValleCastro, however, alleges that Kendrick is disguising his employment as a "Litigation Specialist" with Green Tree. In support of that contention, she provides a document she claims is Kendrick's résumé. Am. Compl. ¶ 3.8(c), Ex. A. Taking ValleCastro's allegations to be true for the purposes of this motion, as a litigation specialist, Kendrick's position and his affidavit arguably suggest that he may have been "personally engaged" in Green Tree's debt collection efforts against ValleCastro, although ValleCastro has not successfully alleged that his participation is more extensive than his role in the state action. *Allison*, 2015 WL 860757, at *2.

ValleCastro has also sufficiently alleged that NHBT is a debt collector under the statute because it acquired the debt after it was in default. She alleges that NBHT "regularly sends collection letters and files collection lawsuits" and "regularly engaged in purchasing defaulted debt portfolios."[2] Am. Compl. ¶¶ 3.4(f), (g). Additionally, she had adequately alleged that NBHT

---

[2] It is debatable whether ValleCastro has in fact alleged sufficient facts to demonstrate that NBHT has met either of the additional elements of the debt collector definitions. Comparable cases surviving a motion to dismiss have

acquired her debt when it was in default. Am. Compl. ¶ 5.13, Ex. H. As discussed above, the Second Circuit treats an entity that acquired and then attempts to collect debt in default as debt collectors under the FDCPA, even if the entity does not "service" the debt, and "nominally owns the debt and is collecting it for itself." *Sykes v. Mel Harris & Associates, LLC*, 757 F. Supp. 2d 413, 423 (S.D.N.Y. 2010) (citing *Alibrandi*, 333 F.3d at 83–85); *see also Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484, 488 (S.D.N.Y. 2014); *Pacheco*, 698 F. Supp. 2d at 295. Accordingly, NBHT's argument that it should be treated as a creditor rather than a debt collector because it now owns the debt is unavailing.

 1. *False / Unfair Representation Claims Under 15 U.S.C. §§ 1692e and 1692f*

  Relevant to the present motion, ValleCastro contends that Green Tree and Kendrick are subject to liability for making false or misleading representations in violation of 15 U.S.C. §§ 1692e and 1692f.

  Section 1692e provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt" and describes a non-exhaustive list of proscribed debt collection practices, including "the false representation of . . . the character, amount, or legal status of any debt," *id.* § 1692e(2)(A); "the threat to take any action that cannot legally be taken," *id.* § 1692e(5); and "the use of any business, company or organization name other than the true name of the debt collector's business, company or

---

generally had more support and hewed more closely to the statutory definition. *See Sykes v. Mel Harris & Associates, LLC*, 757 F. Supp. 2d 413, 423 (S.D.N.Y. 2010) (sufficiently alleging that defendants were debt collectors because: (1) defendants "have filed more than 100,000 debt collection actions in state courts since 2006;" and  (2) alleging "numerous instances in which [the defendants] used interstate wires, to prepare non-military affidavits and to freeze plaintiffs' bank accounts, among other acts"); *Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484, 488 (S.D.N.Y. 2014) (plaintiff specifically alleged that the "principal purpose of [defendant's] business is the purchase of defaulted consumer debts originally owed . . . to others" and that "[defendant] uses the mail in purchasing defaulted consumer debts, usually at a significant discount to their face value, and then seeks to collect on those debts"). Here, ValleCastro has not conformed her pleading closely to the requirements of the statute; however, because she is proceeding *pro se*, I will liberally construe her allegations as sufficient for the purposes of this motion.

organization," *id.* § 1692e(14). Similarly, section 1692f provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," and provides a non-exhaustive list of proscribed practices.

"In evaluating potential violations of the FDCPA, the court must use an objective standard based on whether the 'least sophisticated consumer' would be deceived by the collection practice." *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 252 (S.D.N.Y. 2011) (citing *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 236 (2d Cir. 1998)). That test nevertheless "does not conflate lack of sophistication with unreasonableness." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010).

Although the Second Circuit has not clearly established that violations of section 1692e must be material in order to be enforceable, it has cited other circuits so holding with apparent approval. *See Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x. 89, 94 (2d Cir. 2012); *see also Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 170 (E.D.N.Y. 2013) (discussing *Gabriele* and adopting a materiality standard); *Lautman v. 2800 Coyle St. Owners Corp.*, No. 14-CV-1868 ARR VVP, 2014 WL 4843947, at *11 (E.D.N.Y. Sept. 26, 2014) (same). "Statements are material if they influence a consumer's decision to pay a debt or if they would impair the consumer's ability to challenge the debt." *Lautman*, 2014 WL 4843947, at *11 (citation omitted).

In Count One, ValleCastro alleges that Green Tree violated sections 1692e or –f by: (1) "making it impossible to determine the character, amount or legal status of the debt," Am. Compl. ¶ 6.1, and (2) concealing that it was functioning as a debt buyer during the relevant period, *id.* ¶ 6.2.

The second allegation can be quickly dispatched. ValleCastro's claim that Green Tree is a debt buyer relies entirely on one letter from Landmark indicating Green Tree as the "creditor" on the account. Am. Compl. ¶ 5.3, Ex. C. Every other communication from or about Green Tree attached to the pleadings clearly indicates that Green Tree is the servicer of the debt. The contrary statement in Landmark's letter appears to be little more than a typo, and, in combination with confirmation of Green Tree's servicer-status from so many other sources, could not plausibly have confused even the least sophisticated reasonable consumer. *See Gabriele v. Am. Home Mortgage Servicing, Inc.*, 503 F. App'x 89, 95 (2d Cir. 2012) (dismissing an FDCPA claim alleging a "mere technical falsehood that misled no one"). That portion of Count One is, accordingly, dismissed with prejudice.

With respect to the first allegation, ValleCastro has not raised any specific false, deceptive, or misleading representations on the part of Green Tree with respect to the amount owed, the origin of that debt, or the status of her payments on the account. She has, however, evidenced real confusion about who owns the debt. The question here is not whether that confusion is genuine, but whether it was a reasonable response to Green Tree's communications that would have materially impeded ValleCastro's ability to pay or challenge the debt. As the Eastern District of New York observed in *Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163 (E.D.N.Y. 2013), "a false representation of the owner of the debt could easily mislead the least sophisticated consumer." *Id.*, 170–71. In *Fritz*, however, the defendants had admitted that a legal complaint had actually named an incorrect party as the owner of the debt, creating a risk that the consumer would attempt to pay off her obligation to the wrong party. *Id.* In the present case, ValleCastro has not adequately alleged that any of Green Tree's communications named an incorrect debt owner or otherwise misled her about whom she should be paying. Instead, as

12

alleged in the amended complaint, Green Tree made claims on behalf of GE Capital Bank exclusively through at least November 14, 2013, and subsequently made claims exclusively on behalf of NBHT after December 18, 2013. Green Tree's January 3, 2014 bill "on behalf of NBHT," sent before Green Tree had informed ValleCastro of NBHT's new ownership, may have been confusing, but because the bill was apparently accurate, it does not involve the kind of deception required for a section 1692e or –f violation.

ValleCastro has also alleged that Green Tree's communications caused confusion about the legal effect of GE Capital Bank's default judgment on her continuing obligation to pay NBHT. Am. Compl. ¶¶ 5.14–5.15.  Her argument can be understood as follows: after the GE Capital suit was reduced to judgment, ValleCastro might have reasonably understood that the *only* way she could now satisfy her debt obligation was by making payments *to GE Capital* in accordance with that judgment. Green Tree then began sending bills related to the same debt, without explaining the relationship between the payments to NBHT demanded by those bills and the amount nominally owing to GE Capital on the judgment. Thus, as in *Fritz*, a reasonable consumer could be unsure whether she should resolve her obligation by paying off GE Capital Bank in accordance with the judgment, or instead by paying off NBHT in accordance with Green Tree's bills. *Fritz*, 955 F. Supp. 2d at 170–71. Because this ambiguity could materially impede ValleCastro's ability to dispute or resolve her debt, the allegations in the amended complaint are sufficient to constitute a violation of section 1692e or –f. The defendants' motion to dismiss on this Count is thus denied.

In Count Two, ValleCastro alleges that: (1) Green Tree and Kendrick violated section 1692e(14) by alleging that the state collection action was taken on behalf of GE Capital Retail Bank, Am. Compl. ¶ 7.2; and (2) the affidavit provided by Kendrick violated sections 1692e or –

f by falsely representing that he was an agent of the Bank, by lying or obscuring the truth in the affidavit, and by threatening imminent legal action through the use of legal terminology, *id.* ¶ 7.6 (a)–(i).

Section 1692e(14) prohibits "the use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." ValleCastro alleges, in effect, that Green Tree and Kendrick's lack of authorization from GE Capital Retail Bank amounted to a false use of its name in the collection proceedings. But she has failed to make any non-conclusory allegation that GE did not own the debt or condone the collection actions taken under its name. As the defendants point out, GE's statement that it did not own the debt in July 2014 has no bearing on whether it owned the debt on June 14, 2013, when the collection action was instituted. Defs.' Mot. Dismiss Br. 15. Furthermore, ValleCastro has not alleged that Green Tree was actually involved in bringing the collection action in any material way,[3] or that she might be able to make a plausible showing to that effect through further amendments. This portion of Count Two is, accordingly, dismissed with prejudice.

ValleCastro also alleges that Kendrick's affidavit in the collection proceeding falsely represented that he was an officer or agent of GE, when he was in fact an employee of Green Tree. The defendants argue that, even if Kendrick was an employee of Green Tree at the time, there is no defect in the affidavit because a loan servicer "is considered an agent of the note holder." Defs.' Mot. Dismiss Br. 15. That argument, even if legally correct, is unresponsive to the "least sophisticated consumer" standard for section 1692e violations: the least sophisticated consumer is unlikely to be aware of the agency relationships between servicers and creditors, and instead would reasonably read Kendrick's self-identification as an "officer/agent of GE

---

[3] Assuming, *arguendo*, that Kendrick was, in fact, a Green Tree employee, his Affidavit would constitute ValleCastro's sole direct allegation regarding Green Tree's involvement in the case. But ValleCastro has failed to sufficiently allege any liability arising from that affidavit. Accordingly, Kendrick is dismissed from this action.

CAPITAL RETAIL BANK" to mean just that. But while Kendrick's alleged misrepresentation in an affidavit might merit other consequences, it is not clear how it would impact ValleCastro's ability to dispute or satisfy her obligation. Thus, that alleged misrepresentation does not meet the materiality standard implicit in section 1692e, and the remaining claims under Count Two are dismissed with prejudice.

In Count Three, ValleCastro alleges that Green Tree violated section 1692e(5) by engaging in an unauthorized collection campaign purportedly on behalf of GE Capital Bank and thereby violating various Connecticut licensing requirements under the Consumer Collection Agencies Act (the "CCAA"), Conn. Gen. Stat. §§ 36a-801, *et seq*. Section 1692e(5) prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken." The CCAA provides that: "[n]o person shall act within this state as a consumer collection agency unless such person has first obtained a consumer collection agency license . . . ." Conn. Gen. Stat. § 36a-801(a).  It further provides that "[n]o person licensed to act within this state as a consumer collection agency shall do so under any other name or at any other place of business than that named in the license." *Id.* § 36a-801(i).[4]

ValleCastro concedes that Green Tree obtained appropriate licenses for locations in Painesville, Ohio and Tempe, Arizona. Am. Compl. ¶ 8.5. She argues that Green Tree nevertheless violated the CCAA by sending correspondence to her from an address in South Dakota, and by requesting on two billing statements that payment be sent to a P.O. box in Illinois. The defendants point out that the billing statements were sent from Tempe, Arizona, where Green Tree is licensed. Am. Compl. Exs. I, M. They further argue that the letters from

---

[4] In this Count, ValleCastro also raises claims under Conn. Gen. Stat. § 36a-805, and section 1692e(8) of the FDCPA. Because those claims arise from the same unsupported allegations regarding Green Tree's involvement in the state court collection action, they are also dismissed with prejudice.

South Dakota are unproblematic because they "simply acknowledged receipt of or responded to ValleCastro's correspondence." Defs.' Mot. Dismiss Br. 16.

There is no private right of action under any of the Connecticut statutes cited. *See* Conn. Gen. Stat. §§ 36a-808; 36a-810; *Lemire v. Wolpoff & Abramson, LLP*, 256 F.R.D. 321, 323 (D. Conn. 2009); *Gaetano v. Payco of Wisconsin, Inc.*, 774 F. Supp. 1404, 1414 (D. Conn. 1990) (discussing similar claims under the FDCPA and Conn. Gen. Stat. § 42-127a, predecessor to section 36a-801). Nevertheless, ValleCastro can be understood to argue that Green Tree's failure to obtain or use appropriate Connecticut license renders all of its collection actions in Connecticut unlawful, and therefore constitutes *per se* violations of the FDCPA. Although there is some precedent for that argument, courts have also drawn a distinction between material and technical violations. *Compare Gaetano v. Payco of Wisconsin, Inc.*, 774 F. Supp. 1404, 1414–15 (D. Conn. 1990) (finding violations under sections 1692e(5), (10), and 1692f where debt collector merely "stat[ed] that it intended to use all means at its disposal to collect"), *with Goins v. JBC & Associates, P.C.*, 352 F. Supp. 2d 262, 271–72 (D. Conn. 2005) (finding 1692e(5) violation because the communication constituted an "unequivocal threat to take action")*, and Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F. Supp. 2d 200, 209 (E.D.N.Y. 2009), *as amended* (Dec. 4, 2009) (finding no violation where the communication at issue could not "be construed as a threat to litigate"). I find the latter approach persuasive.

Assuming that ValleCastro has established Green Tree's technical violation of the CCAA, she has nevertheless failed to show that any of the defective correspondence constitutes a "threat to litigate." The only alleged communication by Green Tree that comes close is the January 3, 2013 bill, which stated: "Your account may be reported to one or more credit bureaus and may be reviewed for possible legal action." Am. Compl. ¶ 5.15(b), Ex. I. That statement,

made by a loan servicer rather than a lawyer and couched in terms of possibility, does not suggest sufficient imminence to constitute a section 1692e(5) violation. *See Gervais v. Riddle & Associates, P.C.*, 479 F. Supp. 2d 270, 275 (D. Conn. 2007) ("The least-sophisticated consumer, when explicitly told that litigation is merely being considered as an option, cannot reasonably believe that litigation is authorized and rapidly forthcoming, particularly where the party making the communication is not an attorney."). Accordingly, the claims under Count Three are dismissed with prejudice.

2. *Failure to Validate Claims Under 15 U.S.C. Sections 1692e(10) and 1692g(b)*

Relevant to the present motion, in Counts Five and Six, ValleCastro claims that Green Tree, Kendrick, and NBHT violated sections 1692e(10) and –g(b) by failing to adequately validate the debt in violation of 15 U.S.C. §§ 1692e(10) and 1692g.

As set out above, section 1692e prohibits debt collectors from using a "false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692(e)(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Section 1692g(b) provides that if, within 30 days following a debt collector's "initial communication with a consumer in connection with the collection of any debt" as defined under section 1692g(a),

> the consumer notifies the debt collector in writing . . . that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the

17

original creditor. Any collection activities and communication during the
30-day period may not overshadow or be inconsistent with the disclosure
of the consumer's right to dispute the debt or request the name and address
of the original creditor.

15 U.S.C. § 1692g(b).

District courts in the Second Circuit have repeatedly held that "verification . . . does not
require the debt collector to do anything more than confirm the amount of the debt and the
identity of the creditor, and relay that information to the consumer." *Ritter v. Cohen &
Slamowitz, LLP*, No. 14-CV-5736 ADS ARL, 2015 WL 4523266, at *6 (E.D.N.Y. July 24, 2015)
(quoting *Devine v. Terry*, No. 13–cv–1023, 2014 U.S. Dist. LEXIS 138938, at *26 (D. Conn.
Sept. 30, 2014)); *Blanc v. Palisades Collection, LLP*, No. 06 CIV. 1626 (CLB), 2007 WL
3254381, at *7 (S.D.N.Y. Nov. 1, 2007).

In Count Five, ValleCastro alleges that the foregoing provisions were violated by TMM's
failure to consult with a creditor before responding to her request, as well as its failure to provide
an itemized list or dated payment history to facilitate resolution of the dispute, Am. Compl. ¶ 9.3
(a)–(b); as well as alleging that Green Tree, Kendrick, and Marohn "made a collective decision
to withhold dated payment history, [and to] obscure the 'charged-off status' of the debt, *id.* ¶
9.3(c).

ValleCastro fails to allege any agency relationship that would justify attributing TMM's
conduct to Green Tree. *See Rogers v. Capital One Servs., LLC*, No. 10-CV-398 VLB, 2011 WL
873312, at *6 (D. Conn. Feb. 19, 2011), *aff'd,* 447 F. App'x 246 (2d Cir. 2011) (citing *Clark v.
Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006)). Furthermore,
ValleCastro's conclusory allegations regarding the "collective decision" among Green Tree,
Kendrick, and Marohn, without more, are not sufficiently plausible to survive this motion. But
even setting aside those defects, ValleCastro's pleadings are terminally inadequate, because the

18

affidavit, as well several of Green Tree's subsequent letters to ValleCastro, provided sufficient verification simply by identifying the original creditor and the amount of the debt. Am. Compl., Ex. F; Defs.' Mot. Dismiss Br. 3 n.4, Ex. D; *see also Ritter*, 2015 WL 4523266, at *6. Accordingly, ValleCastro's claims against Green Tree and Kendrick under Count Five are dismissed with prejudice.

In Count Six, ValleCastro similarly alleges that Green Tree and NBHT violated sections 1692e(10) and –g(b) when Green Tree failed to respond to her requests by adequately validating the debt. Am. Compl. ¶¶ 10.4, 10.7.

When considering allegations under section 1692g, the Second Circuit has emphasized that the FDCPA was intended to address "the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008) (quoting S. Rep. No. 95–382, at 4 (1977), as reprinted in 1977 U.S.C.C.A.N. 1695, 1699). Accordingly, some district courts in the Second Circuit have held that each successive debt collector must send a validation notice under section 1692g(a) even if a prior debt collector already sent a notice regarding the same debt. *Tocco v. Real Time Resolutions, Inc.*, 48 F. Supp. 3d 535, 539 (S.D.N.Y. 2014); *Tipping-Lipshie v. Riddle*, No. CV 99-4646, 2000 WL 33963916, at *3 (E.D.N.Y. Mar. 2, 2000).

ValleCastro's pleadings thus suggest an apparently novel argument that the first contact sent by Green Tree on behalf of NBHT should be construed as the "initial communication" from both parties[5] in a new collection effort, and that Green Tree and NBHT should have issued a new verification notice under section 1692g(a). But although the pleadings suggest that the first

---

[5] The FDCPA defines communication broadly to include "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Accordingly, if, as ValleCastro alleges, NBHT directed Green Tree to contact ValleCastro on its behalf, that communication can also arguably be attributed to NBHT.

contact from Green Tree on behalf of NBHT was the January 3, 2014 bill, ValleCastro has failed to specifically allege the date and nature of an "initial communication" under section 1692g(a) that could have triggered her validation rights under section 1692g(b), or to affirmatively assert that no validation notice was, in fact, received. Accordingly, I dismiss the claims under Count Six without prejudice to ValleCastro amending her complaint.

B. <u>ValleCastro's Claims under CUTPA</u>

In Count Seven, ValleCastro alleges that Green Tree and NBHT violated CUPTA on the same basis as her foregoing allegations regarding the FDCPA.

CUPTA provides that: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42–110b(a). "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42–110b, may bring an action" to recover actual damages, punitive damages, and equitable relief. *Id.* § 42–110g(a).

CUPTA's "ascertainable loss requirement is a threshold barrier" to relief under the statute. *Linsley v. FMS Inv. Corp.*, No. 3:11-cv-961 (VLB), 2012 WL 1309840, at *6 (D. Conn. Apr. 17, 2012) (citations omitted).

> An ascertainable loss is a loss that is capable of being discovered, observed or established. The term loss has been held synonymous with deprivation, detriment and injury. To establish an ascertainable loss, a plaintiff is not required to prove actual damages of a specific dollar amount. But in order for a loss to be ascertainable it must be measurable even though the precise amount of the loss is not known. A plaintiff also must prove that the ascertainable loss was caused by, or 'a result of,' the prohibited act.

*Id.* at *6–7 (internal citations and quotation marks omitted).

In the affidavit accompanying the complaint, ValleCastro states that, as a result of the defendants' actions, she has suffered actual losses, including: "costs incurred in responding to agents [sic] unlawful suit, missed employment days," as well as various emotional and stress-related physical injuries. Am. Compl., ValleCastro's Aff. ¶ 6. As the defendants point out, "courts in this district have consistently held that false communications from a debt collector alone, without further damage to a plaintiff, are insufficient to constitute ascertainable loss." Defs.' Mot. Dismiss Br. 19 (quoting *Gervais v. Riddle & Associates, P.C.*, 479 F. Supp. 2d 270, 279 (D. Conn. 2007) (collecting cases)). The cases collected in *Gervais*, however, all concern motions for summary judgment. *See Goins v. JBC & Assocs., P.C.*, 352 F. Supp. 2d 262, 275 (D. Conn. 2005); *Maguire v. Citicorp Retail Servs., Inc.*, No. 3:95-cv-2113 (AHN), 1997 WL 280540, at *6 (D. Conn. May 19, 1997)*, aff'd in part, vacated and remanded in part on other grounds*, 147 F.3d 232 (2d Cir. 1998); *Tragianese v. Blackmon*, 993 F. Supp. 96, 100 (D. Conn. 1997); *Young v. Citicorp Retail Servs., Inc.*, No. 3:95-cv-1504 (AHN), 1997 WL 280508, at *6–7 (D. Conn. May 19, 1997), *aff'd*, 159 F.3d 1349 (2d Cir.1998); *Krutchkoff v. Fleet Bank, N.A.*, 960 F. Supp. 541, 550 (D. Conn. 1996). Each of those courts gave the plaintiff an opportunity to prove ascertainable loss. For instance, the *Goins* court observed that "[t]he threshold of a showing of measurable loss is not great," and suggested that it might be met "in a variety of ways," including with evidence demonstrating the "expenses in challenging the debt collection effort" or the extent of the consumer's resulting emotional distress. *Goins*, 352 F. Supp. 2d at 275–76.

Taking ValleCastro's allegations to be true, she has made a plausible showing of ascertainable loss against Green Tree resulting from the misconduct alleged in Count One, and accordingly, the defendants' motion to dismiss the claims against Green Tree under that Count is

denied. As discussed above, the conduct discussed in Count One regarding the legal status of the debt can also be attributed to NBHT, and accordingly, the defendants' motion to dismiss the claims against NBHT under that Count are also denied.[6]

## IV.    Conclusion

Kendrick's motion to dismiss ValleCastro's claims against him is granted with prejudice. NBHT's motion to dismiss ValleCastro's FDCPA claims is granted without prejudice to ValleCastro amending her complaint, and its motion to dismiss ValleCastro's CUTPA claims is denied. Green Tree's motion to dismiss ValleCastro's FDCPA claims against it is granted with prejudice with respect to the claims in Counts Two, Three, and Five and granted without prejudice with respect to Count Six, and denied with respect to Count One, and its motion to dismiss the CUTPA claims against it is denied.

So ordered.

Dated at Bridgeport, Connecticut, this 27th day of October, 2015.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

---

[6] In addition to allegations regarding NBHT's acquisition of and collection on the debt, ValleCastro also claims in this Count that NBHT "threatened to tamper with public records at the expense and/or to the detriment of consumers." Am. Compl. ¶ 11.4(c). It is unclear what conduct is associated with that allegation, and accordingly the claim is dismissed with leave to amend.