UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUNILDA VALLECASTRO,<br>    Plaintiff,<br><br>v.<br><br>TOBIN, MELIEN & MAROHN, *et al.*,<br>    Defendants. | No. 3:13-cv-1441 (SRU) |
| NELSON VALLE,<br>    Plaintiff,<br><br>v.<br><br>GREEN TREE SERVICING, LLC,<br>    Defendant. | No. 3:16-cv-277 (SRU) |

## ORDER

Brunilda Raymos-Ayala (formerly ValleCastro) and Nelson Valle, acting *pro se*, have filed various claims related to debt collection efforts beginning in 2013. In *ValleCastro v. Tobin, Melien & Marohn, et al.*, 3:13-cv-1441 (SRU), which concerns the defendants' efforts to collect on a loan secured by Raymos-Ayala's home that was obtained in 2006, the sole remaining claims are Raymos-Ayala's claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), against defendants Green Tree Servicing, LLC (doing business as "Ditech Financial LLC") and National Bear Hill Trust, and Valle's claims against Green Tree under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). In *Valle v. Green Tree Servicing, LLC*, 3:16-cv-277 (SRU), which concerns Green Tree's efforts to collect on a loan

secured by the same property that was obtained in 2005, the sole surviving claims are FDCPA claims brought by Valle against Green Tree.

The defendants in both cases now move for enforcement of a settlement agreement they assert was reached between the parties. (doc. 118 in the '1441 case; doc. 39 in the '277 case). For the following reasons, the defendants' motion to enforce the settlement agreement is **granted in part and denied in part**.

I.     Background

The following facts appear to be uncontested by the parties and supported by exhibits submitted with the briefing on these motions. On January 13, 2017, Nelson Valle attended a deposition at the offices of Shawn Smith, attorney for both remaining defendants in both cases, Green Tree and National Bear Hill Trust. Instead of holding the deposition, however, the parties entered into settlement negotiations. At the conclusion of the session, Smith and Valle created a transcript stating, in relevant part:

> MR. SMITH: A formal settlement agreement will be executed. The following are the major terms in the agreement that all parties have agreed to:
>
> Ditech shall pay $7,000 to the Plaintiffs within 30 days after receiving the executed version in the settlement agreement, an IRS form W9, and a receipt of executed copies of the stipulations of dismissal, with prejudice in both cases.
>
> Two, once the occupants of the property located at 66 Montowese Street in Hartford, Connecticut have vacated the property, Ditech shall pay an additional $5,000 to the Plaintiffs.
>
> Three, the deficiency as to the first note and first mortgage in the amount – shall be waived.
>
> For consideration of those Ditech's payments and the waiver of the deficiency, the Plaintiffs will agree to execute and deliver to Defendant's counsel stipulations of dismissal of both actions with prejudice, which

Defendants['] counsel shall hold in escrow and file with the court after making the $7,000 payment to the Plaintiffs.

Second, the Plaintiffs agree to waive any rights or defenses concerning the foreclosure of the subject property.

Three, they agree that all three occupants of the property, Ms. Raymos-Awala[sic], Mr. Valle, and Ms. Wendy Valle shall vacate the property by April 14, 2017.

The Plaintiffs also acknowledge and agree that Ms. Raymos-Awala defaulted on the terms and conditions of her second loan.

The Plaintiffs also agree to release Ditech, National Bear Hill Trust, BNY Mellon as trustee, and GE, and any servicers of the first or second loans, including Bank of America or any of the foregoing affiliates, from any past or present claims relating to or arising from the first or the second loans or the underlying loan documents, the servicing of the first or the second loans, and the subject property.

And all parties understand that this agreement does not constitute an admission of liability.

Mr. Valle, did I accurately and correctly state the major terms of the parties' settlement agreement?

MR. VALLE: Yes.

MR. SMITH: And you're speaking on behalf of yourself; correct?

MR. VALLE: Yes. I'm speaking on behalf of myself and having spoken to co-plaintiff in the 1441 case, that's Ms. Brunilda Raymos-Awala, therein referenced as ValleCastro.

MR. SMITH: Mr. Valle, you are also her –

MR. VALLE: Administrator, agent with the authority, the settlement authority.

MR. SMITH: Wonderful.

So that concludes our negotiation today. Your deposition is continued, by mutual agreement, until January 20, 2017. But upon the execution and delivery of the formal settlement agreement, which, again, Plaintiffs [sic] will then hold in escrow, Plaintiffs [sic] will then cancel your deposition for next Friday. Do you understand?

MR. VALLE: I understand. Understood.

Smith Aff., Ex. 3 ('1441, doc. 118-10).

Later the same day, Attorney Smith emailed Valle a "revised confidential settlement agreement that formalizes and memorializes the agreed-upon settlement terms." Smith Aff., Ex. 5 ('1441, doc. 118-11). Smith invited Valle to "review and confirm that these terms are acceptable to Ms. Raymos-Ayala, Ms. Valle, and you," and stated that he would provide the agreement to his clients for their signature after the plaintiffs had confirmed their approval. *Id.* at 1. He also stated he was "glad we were able to resolve these matters." *Id.*

The written agreement recited the terms set out on the record and elaborated in certain respects. In particular, it stated that the first mortgage (the subject of the '277 case) was assigned to Bank of New York Mellon, acting as Trustee for the Certificateholders of the CWABS, Inc. Asset-Backed Certificate Series 2004-05. *Id.* at 3. It also stated that the Bank of New York Mellon "shall waive any right to collect the deficiency owed on the First Note and Mortgage. *Id.* at 5. The written agreement agreed to make the settlement amounts payable to Brunilda Raymos-Ayala, Nelson Valle, and Wendy Valle, *id.* at 4–5, and required that all three release all claims against Green Tree, National Bear Hill Trust, Bank of New York Mellon, and GE, and all of their successors, *id.* at 7. The written agreement included signature lines for Brunilda Raymos-Ayala, Nelson Valle, Wendy Valle, Green Tree both on its own account and as the attorney-in-fact for the Bank of New York Mellon as Trustee. *Id.* at 13–17.

On January 17, 2017, Valle sent an email to Smith explaining that he had not yet signed the agreement because he was "having an attorney review the documents." Smith Aff., Ex. 5 ('1441, doc 118-12). He stated that he had "some questions and revised language." *Id.* He did not express any surprise at being presented with an almost-fully realized settlement document.

4

The same day, responding to an earlier request from the parties, I referred both cases to Judge Robert A. Richardson for a settlement conference. Attorney Smith states in his motion that he initially informed Judge Richardson that a conference was no longer necessary because the case had settled, but Valle refused to sign the written agreement and instead insisted on the conference. The conference was held on February 13, 2017, and did not result in a resolution of these cases.

After the instant motion to enforce the settlement agreement was filed, on March 24, 2017, I held a phone conference to discuss these issues. ('1441, doc. 122). During that conference, and in post-hearing briefing, Valle asserted that he believed the purpose of going on the record was to memorialize his presence at the deposition, and expressed concerns about the inclusion of Bank of New York Mellon and Wendy Valle in the agreement, and about Green Tree's candor during the entire litigation process. ('277, doc. 45)

## II. Discussion

Under both Connecticut[1] and federal law, a contract is binding if the parties mutually assent to its terms, even if the agreement is not signed. *See Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 444 (2d Cir. 2005) (citing, *inter alia*, *Schwarzschild v. Martin*, 191 Conn. 316, 321–22 (1983); *Millgard Corp. v. White Oak Corp.*, 224 F. Supp. 2d 425, 432 (D. Conn. 2002)

---

[1] The parties seem to implicitly agree that Connecticut law governs here and both rely wholly on *Omega* to set out the appropriate legal standards. The settlement agreement at issue in *Omega* resolved a case brought under diversity jurisdiction, however, whereas both of the present cases involve only federal law claims. In *Brown v. City of New York*, 2012 WL 628496, (E.D.N.Y. Jan. 30, 2012), an Eastern District of New York court asked to interpret a settlement agreement resolving federal claims observed that, although the Second Circuit has not definitively ruled on whether state-law principles should apply to that question, a number of other district courts have assumed that the quintessentially contractual nature of settlement agreements requires application of state contract law. *Id.* at *2, report and recommendation adopted*, 2012 WL 626395 (E.D.N.Y. Feb. 27, 2012). The *Brown* Court concluded that, not least because of the general similarity between federal and New York state contract law, "[i]n practice the circuit court and various district courts regularly apply New York law in analyzing whether a settlement agreement should be enforced, even in federal-question cases." *Id.* (internal quotation marks and citation omitted). The same reasoning applies here to suggest that Connecticut law should indeed govern in the present case.

(applying the Connecticut rule to settlement agreements); *Role v. Eureka Lodge No. 434, I.A. of M & A.W. AFL–CIO*, 402 F.3d 314, 318 (2d Cir. 2005) ("[A] voluntary, clear, explicit, and unqualified stipulation of dismissal entered into by the parties in court and on the record is enforceable even if the agreement is never reduced to writing, signed, or filed.")). "A trial court has inherent power to enforce summarily a settlement agreement when the terms of the agreement are 'clear and unambiguous.'" *Id.* (quoting *Audubon Parking Assocs. Ltd. P'ship v. Barclay & Stubbs, Inc.*, 225 Conn. 804, 811 (1993)). With respect to whether mutual assent has been shown, "[t]he Connecticut Supreme Court has held that '[a] contract is not made so long as, in the contemplation of the parties, something remains to be done to establish the contractual relation.' *Id.* (quoting *Klein v. Chatfield,* 166 Conn. 76, 80 (1974)). "The parties' intent is determined from the (1) language used, (2) circumstances surrounding the transaction, including the motives of the parties, and (3) purposes which they sought to accomplish." *Id.* (citing *Klein*).

The uncontested facts in the record indicate that Valle, acting on his own behalf and on behalf of Raymos-Ayala, assented to the terms of the oral settlement agreement. Although Valle now asserts that he believed the purpose of going on the record was simply to memorialize his presence at the deposition, which he believed was required to demonstrate his compliance with the court's orders, the record created was clearly the product of settlement negotiations, including specific and unambiguous obligations for both sides, and describes those terms as part of an "agreement," rather than part of an offer. That the agreement contemplates a subsequent written formalization is, as the defendants point out, insufficient to demonstrate that an oral agreement was not already reached. *See Montgomery v. Smith*, 40 Conn. Supp. 358, 359 (Super. Ct. 1985) (rejecting that argument, in part because the oral settlement agreement resulted in dismissal of the other parties' trial witnesses); *Hunt v. Fuksman*, 189 F.3d 461 (2d Cir. 1999)

(rejecting that argument when made by a *pro se* party); *Vincent v. Hull*, 2012 WL 12883961, at *3 (D. Conn. Dec. 11, 2012), *report and recommendation adopted*, 2013 WL 12123975 (D. Conn. Jan. 23, 2013) (rejecting *pro se* plaintiff's attempt to add additional terms after sending an email stating that he agreed to the settlement agreement that was then reported to the court).

Valle's contention that he was confused about the purpose of going on the record is also insufficient to show that the oral settlement agreement, although validly entered, nevertheless should not be enforceable because it was "'tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted.'" *Brown v. Nationscredit Commercial*, 2000 WL 888507, at *1 (D. Conn. June 23, 2000) (quoting *Callen v. Penn. R.R. Co.*, 332 U.S. 625, 630 (1948)). Although the plaintiffs have expressed concerns that Smith may have misrepresented the parties whose interests he represented during the settlement negotiations, the record clearly indicates that Smith disclosed that the release would include claims against Bank of New York Mellon acting as a trustee, and because it obligated that entity to waive the deficiency against Raymos-Ayala, it would also be a party to the agreement. The plaintiffs' arguments regarding Green Tree's alleged pattern of deceptive practices amount to an argument that they still have a claim in one or both cases on the merits—be that as it may, however, the issue here is whether the plaintiffs entered into an agreement that would require them to relinquish those claims, regardless of their viability, in exchange for other benefits, and I find that they have.

The uncontested facts in the record also indicate, however, that there has not been mutual assent to the terms of the written agreement—the plaintiffs did not sign that agreement, and indicated their on-going concern regarding its terms and structure. Smith's email presenting the written agreement requests the plaintiffs' signature and approval before obtaining the signature

7

of his clients, demonstrating that he, too, did not believe the parties had mutually asserted to the specific language in that written agreement.

Perhaps more importantly to both parties, the record nowhere indicates that Molly Valle assented to the terms of either agreement, or that anyone competent to do so assented on her behalf. It is thus unclear how the settlement agreement may be enforced against her. Untangling the abortive agreement between the defendants and Ms. Valle from that made between the defendants and the plaintiffs, however, is straightforward. Although the written agreement confers several obligations and benefits on Ms. Valle, however, the oral agreement includes her in only one—it requires that she, along with the plaintiffs, vacate the property securing the loans in both cases by April 14, 2017. Removing Ms. Valle's obligation from the equation, the oral settlement agreement is still supported by valid consideration from both sides.

Thus, the record shows that Nelson Valle and Brunilda Raymos-Ayala entered into a valid settlement agreement with the defendants, Green Tree and National Bear Hill Trust, as follows:

- Green Tree shall pay to Brunilda Raymos-Ayala and Nelson Valle $7,000 within 30 days of receiving an executed version of the settlement agreement, IRS Form W-9s, and executed copies of stipulations of dismissal in both cases;
- The deficiency under the first mortgage and note will be waived;
- The plaintiffs will provide Green Tree with signed stipulations of dismissal in both cases, which Green Tree will hold in escrow and file after making the $7,000 payment;

- The plaintiffs shall vacate the property securing the loan.[2] *If* all of the occupants of the property (including Wendy Valle) vacate the property, then Green Tree shall pay the plaintiffs an additional $5,000;[3]

- The plaintiffs will waive any rights or defenses regarding foreclosure on the subject property;

- The plaintiffs will acknowledge that Raymos-Ayala defaulted on the terms and conditions of her second loan; and

- The plaintiffs will release Green Tree, National Bear Hill Trust, Bank of New York Mellon as Trustee,[4] GE, and any servicers of the first or second loan, from any past or present claims relating to the first or second loans, the loan documents, the servicing of those loans, and the subject property.

## III. Conclusion

For the foregoing reasons, the defendants' motion to enforce the settlement agreement, ('1441, doc. 118; '277, doc. 39), is **granted in part and denied in part**. I determine that the defendants and the plaintiffs entered into an oral settlement agreement as set forth in the record,

---

[2] The oral agreement plainly obligates the plaintiffs to vacate the subject property *by* April 14, 2017—that obligation did not disappear after that date passed. And although, as noted above, Wendy Valle is not a party to the oral agreement and accordingly not obligated thereby, the agreement may still validly include an incentive to the plaintiffs to encourage Ms. Valle to vacate the premises in exchange for additional compensation.

[3] The defendants argue in their Reply Brief that their obligation to make the additional $5,000 payment is mooted because it was contingent on the occupants of the property vacating by April 14, 2017. The oral agreement does not expressly link the additional payment to that vacancy date, however; instead, it states unambiguously that "once the occupants of the property located at 66 Montowese Street in Hartford, Connecticut have vacated the property, Ditech shall pay an additional $5,000 to the Plaintiffs."

[4] Anticipating the plaintiffs' objection here, it is irrelevant whether the Bank of New York Mellon is in fact a party to this settlement agreement, or whether Smith is acting as its agent. The plaintiffs agreed to release their claims against that entity in exchange for the various benefits bestowed by the defendants. It is black letter law that consideration for a contract need not redound solely to the benefit of the parties to that contract. *See Hamer v. Sidway*, 124 N.Y. 538 (1891) (holding that abstinence from "drinking liquor, using tobacco, swearing, and playing cards or billiards for money" until the age of 21 constituted valid consideration).

but that they did not enter into a subsequent written agreement, nor did the defendants enter into an enforceable agreement with Molly Valle. Thus, within fourteen days of this order, the plaintiffs shall provide to Green Tree completed and signed IRS Form W-9s and executed copies of stipulations of dismissal in both cases. Within thirty days of the receipt of those documents, Green Tree shall pay the plaintiffs $7,000 and shall file the executed stipulations of dismissal. During the same forty-five day period, the plaintiffs shall vacate the property. If Ms. Valle also vacates the property, Green Tree shall pay the plaintiffs an additional $5,000 within fourteen days of receiving notice of that vacancy. In accordance with those dates, the Clerk shall administratively close both files without prejudice to reopening within 45 days of this order if any term of this Order has not been met.

      So ordered.

Dated at Bridgeport, Connecticut, this 10th day of July 2017.

                                        /s/ STEFAN R. UNDERHILL
                                        Stefan R. Underhill
                                        United States District Judge